### JOE JACKSON V. THE STATE.

No. 10420. Delivered March 23, 1927.

**1.—Aggravated Assault—Instructed Verdict—Properly Refused.**

Where, on a trial for an assault to murder, which resulted in a conviction of an aggravated assault, the evidence on the issue raised of an intentional or an accidental shooting being in conflict, it was for the jury to determine the issue. The jury are not compelled to accept the testimony of any witness, especially of one whose interest in the case is manifest, and the court properly refused a peremptory instruction.

**2.—Same—Impeaching Witness—Evidence Properly Received.**

By the uniform decisions of this court, following the common law, it is the well settled rule that a witness may be impeached by asking him if he has not formerly been indicted for a felony or for any offense involving moral turpitude. The fact that the witness has been tried and acquitted for the offense inquired of, does not in any way effect the admissibility of the evidence.

**3.—Same—Improper Conduct, and Argument of Counsel—Not Sustained.**

Where appellant complains that while addressing the jury, private counsel assisting the state sobbed and cried before the jury, and in his argument characterized the defendant as cold-blooded and hard-hearted, the court having instructed the jury to disregard the remarks, the manifestation of

counsel's intense sympathy for his client, the good State of Texas was hardly calculated to influence the jury to the extent that appellant was deprived of his constitutional guarantee of a fair and impartial trial.

### 4.—Same—Evidence—Harmless, if Error.

There was no harmful error in permitting the state to ask appellant on cross-examination if, when he got the information that there were two safe crackers on the train, who looked like dangerous men, he notified the ranger captain, or sergeant of the rangers. The question was not of that serious character calculated to injure appellant before the jury.

Appeal from the District Court of Val Verde County. Tried below before the Hon. Joseph Jones, Judge.

Appeal from a conviction of an aggravated assault, penalty a fine of $100 and sixty days in the county jail.

The opinion states the case.

*Walter F. Jones* of Del Rio, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction of aggravated assault, punishment fine of $100 and sixty days in the county jail.

Appellant was charged in the District Court of Val Verde County with assault to murder and upon trial was convicted of aggravated assault. He shot one D with a .45 single-action Colt pistol. The only question before the jury trying him was whether the shooting was accidental or otherwise. It is shown that following their arrest for beating their way on a train D and J were walking just ahead of appellant, who was an officer of the city of Del Rio. He had fired one shot, as he claimed, to stop D, who fled when the officer appeared. The two young men had been riding on the blind baggage of the train but stopped at Del Rio, and appellant had been notified of their presence and was looking for them when he saw them get off the blind baggage. When appellant fired his pistol above D's head the latter stopped and came back, and the two men were being marched in front of appellant, they having their hands above their heads and he having his pistol in his hand. Appellant claimed to have stumped his toe and that his pistol went off and shot D in the back. Appellant made no claim of fear or apprehension, or that either of the young men had made any demonstration. One state witness who was looking at the parties when the shot was fired, said they were standing still and that appellant pointed his pistol at D and fired. Another said that appellant did not stumble just before the pistol was fired. The

trial court told the jury in his charge that in determining the guilt of appellant the circumstances should be viewed from his standpoint; that no act done by accident could be an offense; and that if the shooting resulted from appellant stumping his toe, or if the jury had a reasonable doubt on this point, he should be acquitted.

In the able brief of appellant it is insisted that the facts do not justify the verdict of guilty, and that an instruction for a verdict of acquittal should have been given. We are not in accord with this view. The jury do not have to accept the testimony of any witness, especially of one whose interest in the case is manifest. The circumstances detailed by the witnesses for the state were entirely sufficient to carry the case to the jury and to support the conclusion that the shooting was the result of purpose or inexcusable carelessness. An unlawful assault with a deadly weapon not in self-defense is aggravated assault. Hamilton v. State, 60 Tex. Crim. Rep. 258.

It seems so well settled by the uniform decisions of this court, following the common law rule, as not to need discussion,—that one who has been indicted for a felony and becomes a witness upon a trial, may have this fact proven against him as affecting,—if the jury so take it,—his reputation as a witness,—even though he has been acquitted of such offense. Appellant makes a persuasive argument against the validity of this holding, and seeks to have us here declare it erroneous for the state to ask appellant if he had not been indicted for murder in Pecos County, upon the proposition that the State's Attorney knew before he asked the question that appellant had been acquitted. We must decline to overrule the number of decisions heretofore rendered by this court and our predecessors adhering to the doctrine of allowing such testimony. The instruction given the jury concerning their use of this testimony was in accord with precedents and proper.

It is stated in bill of exceptions No. 1 that private counsel assisting the state sobbed and cried before the jury while the injured party detailed the circumstances of the shooting, also that upon objection counsel refrained from further so doing; further, that in making the closing argument for the state the same counsel referred to the incident and characterized the defense as cold-blooded and hard-hearted, to which remarks appellant further objected, the objection was sustained, and the trial court directed the jury not to consider said remarks. Appellant's counsel here insists that the remarks were so prejudicial as that they could not be effaced or their effect taken away by

the instruction.   The point is eloquently and forcibly argued in appellant's brief but without convincing us that what occurred in the first instance may not have been but an exhibition by the private prosecutor of his possession to an unusual extent, of that quality of mercy which is not strained; and that the gentle dew which dropped from his eyes, accompanied by sobs, may not have been the irresistible overflow from an unusually sympathetic heart.   To be sure, if counsel for the defense believed these to be "Tears of ingenious sorrow" or akin to those of the "Paid mourner at a stranger's funeral, shedding crocodile tears," and that the cause of his client would be unfairly affected by some spurious touch of a but seeming tender contagion, he only did right in objecting to having his conduct referred to as cold-blooded and hard-hearted by the gentleman whose sympathetic exhibition he had objected to.   However, this court espouses neither side of the lachrymose dispute, and viewing the entire matter from what we think must have been the standpoint of the jury, are of opinion that nothing therein influenced the verdict.

The record shows that appellant testified that he was called to come and get two safe crackers off the train.   Bill No. 3 sets out that on cross-examination appellant was asked if when he got the information that there were two safe crackers on the train who looked like dangerous men, he notified the ranger captain or sergeant of the rangers.   Appellant objected, stating what he thought to be the wrongful purpose of the question. Private prosecutor denied asking the question for the purpose stated, and said that as he understood the defense, it was based on the excited condition of appellant's mind due to the fact that when he went to the place he felt that he was going to arrest dangerous men, and that there were other peace officers in the house with him at the time.   We are not able to say what was the motive or purpose of the prosecutor in asking the question, or in making the statement to the court of what his purpose was; but the matter does not appear to us of any obviously hurtful character such as would call for review at our hands.

We do not think the state's purpose in recalling the witness Jennett was to impeach any of its other witnesses.   Other of the state witnesses had testified that D was ahead of Jennett.   The latter had already sworn that he was in front of D when the shot was fired.   The state apparently recalled Jennett to have him fix the nearness of the two boys to each other when appellant shot.

Finding no error in the record, the judgment will be affirmed.
*Affirmed.*